**UNITED STATES of America, Appellee,**

v.

**Frances SLADE, Defendant, Appellant.**

**No. 92–1176.**

United States Court of Appeals,
First Circuit.

Heard Oct. 8, 1992.
Decided Nov. 24, 1992.

Evan Slavitt, with whom Hinckley, Allen, Snyder & Comen, Boston, Mass., was on brief, for appellant.

J. Carol Williams, Atty., Environment & Natural Resources Div., U.S. Dept. of Justice, with whom Vicki A. O'Meara, Acting Asst. Atty. Gen., Jacques B. Gelin and H. Claire Whitney, Attys., Washington, D.C., were on brief, for U.S.

Before SELYA, Circuit Judge, COFFIN, Senior Circuit Judge, and BOUDIN, Circuit Judge.

SELYA, Circuit Judge.

This appeal challenges the district court's refusal to grant a new trial to a criminal defendant on the basis of evidence that the defendant claims was newly discovered. We affirm.

I

On October 4, 1989, a jury found Frances Slade, a managerial employee of Mac-Donald & Watson Waste Oil Company (M & W), guilty of two counts of knowingly

causing a hazardous waste to be transported to an unpermitted facility in violation of section 3008(d)(1) of the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6928(d)(1) (1988). On appeal, we affirmed the convictions of several defendants (including Slade) whilst vacating the convictions of Eugene D'Allesandro (M & W's president) and Narragansett Improvement Company (holder of the RCRA permit under which M & W operated in Rhode Island). *See United States v. MacDonald & Watson Waste Oil Co.*, 933 F.2d 35 (1st Cir.1991).

Phillip Lavigne, the former manager of M & W's Boston office, did not testify at the original trial. During D'Allesandro's retrial, however, the government called Lavigne as a witness. In the course of his testimony, Lavigne recounted the substance of certain conversations in which he and Slade had participated. These conversations related to the events underlying Slade's conviction.[1] On December 11, 1991, Slade moved for a new trial, citing this testimony as newly discovered evidence.

The district court concluded that the evidence in question "consist[ed] of facts that were clearly known to [Slade] at the time of [her] trial." Hence, it denied relief. This appeal followed.

## II

■■■ Freshly discovered evidence is sufficiently sturdy to warrant a new trial in a criminal case only if (1) the evidence was unknown or unavailable to the defendant at the time of trial; (2) the failure to learn of it was not a result of the defendant's poor diligence; (3) the new evidence is material; and (4) the impact of the new evidence is so strong that an acquittal would probably result upon retrial. *See United States v. Natanel*, 938 F.2d 302, 313 (1st Cir.1991), *cert. denied*, — U.S. ——, 112 S.Ct. 986, 117 L.Ed.2d 148 (1992); *United States v. Martin*, 815 F.2d 818, 824 (1st Cir.), *cert. denied*, 484 U.S. 825, 108 S.Ct. 89, 98 L.Ed.2d 51 (1987); *United States v. Wright*, 625 F.2d 1017, 1019 (1st

Cir.1980). The defendant must shoulder the burden of establishing each facet of the four-part test. *See Natanel*, 938 F.2d at 313; *Wright*, 625 F.2d at 1019.

■■ Because the district court is usually in a much better position to judge the credibility of the witnesses and to assess the highly nuanced relationship between the purported new evidence, and what previously transpired at trial, we treat the district court's handling of such motions with considerable deference. Consequently, we will reverse a denial of a motion for new trial premised on newly discovered evidence only for manifest abuse of the district court's informed discretion. *See Natanel*, 938 F.2d at 313.

## III

It would serve no useful purpose to rehearse the factual predicate on which Slade's conviction rests. For one thing, we have already discussed those facts at some length. *See MacDonald & Watson*, 933 F.2d at 39–40. For another thing, our resolution of this appeal hinges not so much on the factual framework as it does on the procedural posture of the appeal.

### A

The hazardous waste that was allegedly brought to an improper facility at Slade's direction consisted of contaminated soil from the so-called Master Chemical property. At D'Allesandro's second trial, Lavigne testified that Slade "explicitly informed the heads of MacDonald & Watson's Boston and Rhode Island offices that MacDonald & Watson could not accept the soil from the Master Chemical site...." In her motion for a new trial, Slade posited this bit of testimony as new evidence. She hypothesized that, by using Lavigne's testimony to show that she had, on earlier occasions, rejected samples from the Master Chemical site, she would have undermined the prosecution's theory that she knowingly permitted the illegal dumping. Although acknowledging that a person's

---

**1.** On November 18, 1991, the judge presiding at D'Allesandro's second trial granted D'Allesandro's motion for the entry of a judgment of acquittal.

own conversations can rarely constitute "new" evidence, Slade argued that these particular conversations were the exception that proved the rule because she "did not remember speaking to ... Lavigne at any time regarding the chemical analysis for the Master Chemical cleanup...."

The district court declined to buy what Slade was selling. It denied her motion on the ground that Slade could not satisfy the first prong of the four-part test. The court based this ruling on its finding that the facts to which Lavigne testified were clearly known to Slade at the time of her trial.

### B

On appeal, Slade recasts Lavigne's testimony, this time highlighting different aspects. She argues that the nascent fact is Lavigne's statement that soil samples marked "CDM Dorchester" were in fact samples from the Master Chemical site. Slade now concedes that she did not forget about the conversations in which she rejected the Master Chemical soil samples, but says that she never knew the soil was from the Master Chemical site.[2] Although Slade's presentation below and her presentation before us involve the testimony of the same witness, the similarity ends there. The two contentions—one about certain conversations and the other about the marking of soil samples—pull from that testimony distinctly different factual threads and weave them into different legal patterns. We cannot countenance this sort of asseverational embroidery.

As a general rule, appellate litigators should winnow their stable of legal arguments, retaining their most effective claims and putting unpromising claims to pasture before seeking appellate review. This rule does not mean, however, that litigants remain free to shift horses in midstream. Here, Slade attempted just such

an interstitial feat. Following the district court's denial of her motion for a new trial, she apparently reassessed the field, decided her old argument was lame,[3] and now seeks to ride a fresh mount in a new direction. Her attempt fails.

It is a bedrock rule that when a party has not presented an argument to the district court, she may not unveil it in the court of appeals. *See, e.g., Hernandez–Hernandez v. United States*, 904 F.2d 758, 763 (1st Cir.1990); *Clauson v. Smith*, 823 F.2d 660, 666 (1st Cir.1987) (collecting cases); *United States v. Figueroa*, 818 F.2d 1020, 1024 (1st Cir.1987). In this case, Slade's neoteric theory—that her misunderstanding about the significance of the soil-sample labels constituted new evidence—surfaced for the first time on appeal. Consequently, it runs afoul of our well-settled rule.

### C

Slade tries to scale this towering obstacle in two ways. First, she suggests that a passing mention of the soil-sample labels in her motion for a new trial sufficed to acquaint the district court with the labels' validity as new evidence, thereby warding off waiver. Second, she asserts that the raise-or-waive rule is inapplicable since she is not introducing new facts on appeal but simply offering a revised take on how Lavigne's testimony constitutes new evidence. Neither point succeeds in freeing appellant from the condign consequences of her procedural default.

### 1.

Passing allusions are not adequate to preserve an argument in either a trial or an appellate venue. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.) ("Judges are not expected to be mindread-

---

2. We note that this new stance seemingly contradicts the very premise of the affidavit which Slade filed below in support of her motion for a new trial.

3. Because the defendant has neither briefed nor argued the proposition that she advanced below, we need not consider the district court's rejec-

tion of that proposition. After all, theories neither briefed nor argued on appeal are deemed to have been waived. *See, e.g., United States v. St. Cyr*, 977 F.2d 698, 701 (1st Cir.1992); *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.), *cert. denied*, 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990).

ers. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace.") (internal citations and quotation marks omitted), *cert. denied,* 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990); *Paterson–Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990 (1st Cir.1988) (similar). This is such a case. In her motion for a new trial, Slade mentioned the soil-sample labels only once. She did not discuss the importance of the labels in the argument section of her motion nor did she portray the labeling as especially relevant to her legal theories.

 The transcript of Lavigne's testimony ran some sixty-odd pages and covered numerous topics. It is not the district court's responsibility either to cull post-conviction testimony in search of promising factual scenarios or to hunt for attractive legal arguments not articulated in the motion papers. A litigant cannot ignore her burden of developed pleading and expect the district court to ferret out small needles from diffuse haystacks. *Cf., e.g., Mele v. Fitchburg Dist. Court,* 850 F.2d 817, 822 (1st Cir.1988) (quoting *Rivera–Gomez v. Adolfo de Castro,* 843 F.2d 631, 635 (1st Cir.1988)). In a nutshell, because Slade did not develop her current argument regarding the significance of the soil-sample labels in the district court, she cannot press it on appeal.

*2.*

 Slade's thesis that only new facts and not new arguments about those facts are prohibited from debuting in the court of appeals is grounded more in hope than in precedent. Judges are not obliged to do a movant's homework, searching *sua sponte* for issues that may be lurking in the penumbra of the motion papers. Thus, the raise-or-waive rule applies with full force when an appellant tries to present a new theory about why facts previously placed on record are determinative. *See United States v. Dietz,* 950 F.2d 50, 55 (1st Cir.1991); *Clauson,* 823 F.2d at 666. Phrased another way, a party is not at liberty to articulate specific arguments for the first time on appeal simply because the general issue was before the district court. *See, e.g., Dietz,* 950 F.2d at 55; *United States v. Pilgrim Mkt. Corp.,* 944 F.2d 14, 21 (1st Cir.1991); *Brown v. Trustees of Boston Univ.,* 891 F.2d 337, 357 (1st Cir. 1989), *cert. denied,* 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990); *Libertyville Datsun Sales, Inc. v. Nissan Motor Corp.,* 776 F.2d 735, 737 (7th Cir.1985). Were the rule otherwise, little would be resolved in the trial courts.

D

 It is true, as appellant points out, that appellate courts retain the power to dispense with the raise-or-waive rule in order to avoid a gross miscarriage of justice. *See Hernandez–Hernandez,* 904 F.2d at 763; *United States v. La Guardia,* 902 F.2d 1010, 1013 (1st Cir.1990); *United States v. Krynicki,* 689 F.2d 289, 291–92 (1st Cir.1982). However, this power should be exercised sparingly. It is reserved for "exceptional cases," *La Guardia,* 902 F.2d at 1013, in which the previously omitted ground is "so compelling as virtually to insure appellant's success." *Hernandez–Hernandez,* 904 F.2d at 763 (citation omitted). The case at hand does not meet these rigorous criteria.

 At bottom, Slade seeks to raise a factbound issue which, if presented at trial, might—or might not—have influenced the jury's verdict. The confusion over the labeling of the soil samples does not appear to be overwhelmingly exculpatory. To the contrary, the government's case against Slade still seems substantial. After all, she negotiated the contract with Master Chemical which specified the chemical content of the contaminated earth—and the new evidence does not address this crucial fact. We consider it unlikely that the additional evidence, on either of Slade's theories, would have been so compelling as to assure Slade's victory at trial. Hence, the miscarriage-of-justice exception cannot be invoked.[4]

---

4. At the expense of carting coal to Newcastle, we also remark the improbability that Slade, on

## IV

We need go no further. Slade has waived the argument that she pressed below and, therefore, cannot be heard to complain about the district court's rejection of that argument. By the same token, she is estopped from pursuing at this late date a newly emergent argument never presented to the lower court. Because Slade, by her own devices, is caught between the Scylla of abandonment and the Charybdis of procedural default, her appeal founders.

*Affirmed.*

---

either of her espoused versions, could overcome the due diligence prong of *Natanel*'s four-part test. Either way, Slade was chargeable with knowledge of Lavigne's involvement, yet made no effort to produce him at trial.