<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                United States Court of Appeals
                    For the First Circuit

No. 99-1043

                       ROBERT E. HIGGINS,

                     Plaintiff, Appellant,

                               v.

                NEW BALANCE ATHLETIC SHOE, INC.,

                      Defendant, Appellee.

          APPEAL FROM THE UNITED STATES DISTRICT COURT

                   FOR THE DISTRICT OF MAINE

          [Hon. Morton A. Brody, U.S. District Judge]

                             Before

                     Selya, Circuit Judge,
                                
                  Cyr, Senior Circuit Judge,
                                
                  and Boudin, Circuit Judge.
                                
                                
                                
    John P. Gause, with whom Berman & Simmons, P.A., Burton G.
Shiro, and Shiro & Shiro Law Offices were on brief, for appellant.
    Bernard J. Kubetz, with whom Thad B. Zmistowski and Eaton,
Peabody, Bradford & Veague, P.A. were on brief, for appellee.

October 22, 1999

                                

 SELYA, Circuit Judge.  Plaintiff-appellant Robert E.
Higgins sued his former employer, defendant-appellee New Balance
Athletic Shoe, Inc. (New Balance), claiming, inter alia, hostile
environment sex discrimination (relating to actions of, and remarks
by, his supervisor and co-workers, allegedly on account of his
homosexuality), retaliatory discharge (relating to his frequent
complaints about activities in the factory that he thought were
unsafe or illegal), and disability discrimination (relating to a
hearing impairment that impeded his ability to work comfortably in
the factory).  The district court granted summary judgment in New
Balance's favor.  See Higgins v. New Balance Athletic Shoe, Inc.,
21 F. Supp. 2d 66 (D. Me. 1998).  Higgins appeals.  In large part,
the arguments that he advances bear only a faint resemblance to the
arguments raised below, and therefore fail.  Higgins's remaining
arguments are mostly (but not entirely) unavailing.  Thus, we
affirm the judgment below in substantial part.  Regarding one
aspect of Higgins's disability discrimination claim, however, we
vacate the judgment and remand for further proceedings.
I.  BACKGROUND
 We present only the facts necessary to place the appealed
claims into proper perspective, referring the reader who hungers
for greater detail to the district court's more exegetic account.  
See id. at 69-71.  Like the district court, we credit the factual
account that the appellant prefers, consistent with record support,
and indulge all reasonable inferences favorably to his cause.  See
Conward v. Cambridge Sch. Comm., 171 F.3d 12, 17 (1st Cir. 1999).
 For ten years, beginning in 1986, the appellant worked on
the production line at New Balance's factory in Norridgewock,
Maine.  Although he earned generally positive evaluations, he
received two warnings in 1995 about his failure to comport himself
as a team player.  New Balance says that these warnings stemmed
from Higgins's disregard of its philosophy that the manufacturing
process requires workers to collaborate and communicate with each
other.  Higgins refused to sign the warnings because he deemed them
unjustified.
 Apart from job performance, other problems plagued the
appellant in the workplace.  Apparently due to his homosexuality,
many of his fellow workers mistreated him:  they called him vulgar
and derogatory names, made obscene remarks about his imagined
sexual activities, and mocked him (e.g., by using high-pitched
voices or gesturing in stereotypically feminine ways).  The
appellant says that he complained repeatedly to persons in
authority, but nothing was done to ameliorate the situation.  
Indeed, Ron Plourde, who eventually became the appellant's
supervisor, was one of his foremost tormentors.
 A confrontation with yet another tormentor, Melanie
Vitalone, precipitated the appellant's discharge.  According to the
appellant's account, Vitalone not only would ridicule him because
of his sexual orientation but also would blame him when her work
did not go well.  He often griped about Vitalone's predilections,
but without result.  Indeed, his supervisor (Plourde) told him at
one indeterminate point that he would be "out the door" if he
complained one more time about Vitalone.  On what proved to be the
appellant's last day of work (January 4, 1996), Vitalone left the
production line to socialize.  When she returned, a backlog
confronted her.  She lashed out at the appellant, mouthing
derogatory epithets and blaming him for the back-up.  Vitalone
called the matter to Plourde's attention, telling him that she had
asked Higgins a question and that he had refused to reply.  Plourde
spoke with both protagonists.  Then, citing the personnel reports
of Higgins's failed communications, Plourde fired him for
insubordination.
 Harassment was not the appellant's only bugaboo; he
frequently complained about many other conditions and activities in
the workplace.  He groused, for example, about noxious fumes,
misleading product labeling, and substance abuse by factory
workers.  Of particular interest here, he asserts that he
complained that conditions in the factory made it hard for him to
do his work because he had a hearing disability.  He allegedly
asked his superiors to accommodate his impaired hearing by (1)
having a fan installed near his work station (as did other workers)
because steam-induced perspiration was ruining his hearing aid, and
(2) moving a loudspeaker that exacerbated his difficulty in hearing
his co-workers.  According to the appellant, New Balance spurned
these requests.
II.  DISCUSSION
 The summary judgment standard requires this court to give
the nonmovant the benefit of genuinely disputed facts and
inferences, but even this latitudinarian approach does not allow
the nonmovant to switch horses in midstream.  Consequently,
although the court of appeals affords de novo review to orders
granting summary judgment, it will not reverse such an order on the
basis of arguments that were not made in the trial court.  See
Sammartano v. Palmas del Mar Props., Inc., 161 F.3d 96, 97-98 (1st
Cir. 1998); Grenier v. Cyanamid Plastics, Inc., 70 F.3d 667, 678
(1st Cir. 1995); Muniz-Cabrero v. Ruiz, 23 F.3d 607, 609 (1st Cir.
1994); see also United States v. Slade, 980 F.2d 27, 31 (1st Cir.
1992) ("[T]he raise-or-waive rule applies with full force when an
appellant tries to present a new theory about why facts previously
placed on record are determinative.").  With these words of
caution, we turn to the three claims that the appellant presses on
appeal.
               A.  The Hostile Environment Claim.
 The centerpiece of the appellant's case is his contention
that the continual abuse he suffered in the workplace created an
actionably hostile environment within the purview of Title VII, 42
U.S.C.  2000e to 2000e-17, and the Maine Human Rights Act (MHRA),
Me. Rev. Stat. Ann. tit. 5,  4551-4631.  The lower court
rejected this claim on the ground that the appellant had shown only
harassment because of his sexual orientation, not harassment
because of his sex.  See Higgins, 21 F. Supp. 2d at 75-76.  
Accordingly, the court did not reach logically subsequent questions
such as whether the harassment resulted in a tangible employment
action.  See generally Faragher v. City of Boca Raton, 118 S. Ct.
2275, 2293 (1998); Burlington Indus., Inc. v. Ellerth, 118 S. Ct.
2257, 2261 (1998).
 The record makes manifest that the appellant toiled in a
wretchedly hostile environment.  That is not enough, however, to
make his employer liable under Title VII:  no claim lies unless the
employee presents a plausible legal theory, backed by significantly
probative evidence, to show, inter alia, that the hostile
environment subsisted "because of such individual's race, color,
religion, sex, or national origin."  42 U.S.C.  2000e-2(a)(1).  If
the appellant did not frame a trialworthy issue as to this
essential element of his claim, Fed. R. Civ. P. 56(c) authorized
the entry of summary judgment.  See Celotex Corp. v. Catrett, 477
U.S. 317, 322 (1986).  The Supreme Court has made clear in Oncale
v. Sundowner Offshore Servs., Inc., 118 S. Ct. 998 (1998) that, in
same-sex harassment cases as in all sexual harassment cases, the
plaintiff "must always prove that the conduct at issue was not
merely tinged with offensive sexual connotations," but in fact
constituted discrimination "because of . . . sex."  Id. at 1002.  
The statutory "because of . . . sex" requirement is not met merely
because workplace harassment involves sexual matters:  the
substance of the violation is discrimination based on sex or, as
the Court put the matter, "whether members of one sex are exposed
to disadvantageous terms or conditions of employment to which
members of the other sex are not exposed."  Id. (internal quotation
marks omitted).
 We hold no brief for harassment because of sexual
orientation; it is a noxious practice, deserving of censure and
opprobrium.  But we are called upon here to construe a statute as
glossed by the Supreme Court, not to make a moral judgment   and we
regard it as settled law that, as drafted and authoritatively
construed, Title VII does not proscribe harassment simply because
of sexual orientation.  See Hopkins v. Baltimore Gas & Elec. Co.,
77 F.3d 745, 751-52 & n.3 (4th Cir. 1996); Williamson v. A.G.
Edwards & Sons, 876 F.2d 69, 70 (8th Cir. 1989).  The appellant
argued below for a contrary rule, but the court correctly rejected
his importunings.  See Higgins, 21 F. Supp. 2d at 73-74, 76.  To
that extent, summary judgment plainly was appropriate.
 On appeal, Higgins recasts his argument and presents two
additional theories suggesting why the hostile environment that
pervaded New Balance's factory was "because of . . . sex," and thus
actionable under Title VII.  His first, a "sex-plus" theory, posits
that the employer discriminated against men   and only men   who
possessed certain qualities.  Eminent authority indicates that such
a course of action, if proven, may constitute discrimination
"because of . . . sex."  See Phillips v. Martin Marietta Corp., 400
U.S. 542, 544 (1971) (per curiam) (reversing summary judgment and
holding that an employer may have violated Title VII by treating
women with pre-school-age children differently than men with
children of the same age).  Riding this horse for all it is worth,
the appellant identifies the culpable trait   for which men were
punished but women were not   as either a sexual attraction to men
or, alternatively, homosexuality.
 The appellant's second theory derives from Price
Waterhouse v. Hopkins, 490 U.S. 228 (1989), in which the Court
ruled that an individual who suffered adverse employment
consequences because she did not match the social stereotypes
associated with her protected group had an actionable claim under
Title VII.  See id. at 250-52 (plurality op.); id. at 272-73
(O'Connor, J., concurring).  Following this lead, the appellant
points to evidence that his peers mocked him by speaking in high-
pitched voices and mimicking feminine movements.  From these
circumstances, he asseverates that he was harassed because he
failed to meet his co-workers' stereotyped standards of masculinity
and that, therefore, he was harassed "because of . . . sex."
 Both of these initiatives lack focused factual
development in the summary judgment record.  We need not probe this
point too deeply, however, for   absent exceptional circumstances,
not present here   we consider on appeal only arguments that were
before the nisi prius court.  See Muniz-Cabrero, 23 F.3d at 609 ("A
party opposing a summary judgment motion must inform the trial
judge of the reasons, legal or factual, why summary judgment should
not be entered.  If [he] does not do so, and loses the motion, [he]
cannot raise such reasons on appeal." (citations and internal
quotation marks omitted)); see also Slade, 980 F.2d at 30 ("It is
a bedrock rule that when a party has not presented an argument to
the district court, she may not unveil it in the court of
appeals.").  The appellant's newfound theories of sex
discrimination were not.  We explain briefly.
 The papers originally presented by Higgins to the trial
court did not claim sexual harassment at all.  In respect to the
hostile environment claim, his complaint cited only the MHRA and
averred that his co-workers abused him "because of his sexual
preference."  The appellant shifted gears somewhat in his
memorandum opposing summary judgment (mentioning Title VII as well
as cases involving hostile environment sexual harassment), but he
continued to attribute the harassment that he had experienced to
his sexual preference.  As if to drive the point home, he filed a
statement of disputed material facts, see D. Me. R. 56(c), in which
he reasserted that his co-workers knew him to be homosexual and
treated him hostilely "as a result."  He did not, then or
thereafter, attempt to show that the harassment was "because of .
. . sex" and thus actionable under Title VII.
 The appellant later supplemented his summary judgment
opposition.  In that submission, he collected some precedents
regarding claims of same-sex sexual harassment, and his lawyer
wrote, conclusorily, that "[s]exual [h]arassment, based upon sexual
preference or orientation, creating an objectionable, abusive
hostile work environment, perceived so by a reasonable person and
the victim, is sex and gender related, and is a violation of Title
VII . . . as well as of [the MHRA]."  Still, the appellant never
attempted to explain to the lower court how   apart from sexual
preference or orientation   the harassment was "sex and gender
related."  He made no mention of Phillips, Price Waterhouse, or
their respective progeny, nor did he marshal any evidence of abuse
"because of . . . sex."
 Although it is an appellant's duty to order a transcript
of any portion of the proceedings below that he wishes the court of
appeals to consider, see Fed. R. App. P. 10(b)(1), Higgins has not
proffered a transcript of the oral arguments on the summary
judgment motion.  Since we cannot tell from the available record
precisely what his counsel may (or may not) have said during that
session, we must assume that his counsel's oral presentation
tracked his written submissions.  See Campos-Orrego v. Rivera, 175
F.3d 89, 93 (1st Cir. 1999) ("Parties seeking appellate review must
furnish the court with the raw materials necessary to the due
performance of the appellate task.").
 On this record, we cannot reach the new and different
arguments that the appellant attempts to advance on appeal.  We
have warned that parties who permit their adversaries to configure
the summary judgment record place themselves in peril.  See Kelly
v. United States, 924 F.2d 355, 358 (1st Cir. 1991).  A party who
aspires to oppose a summary judgment motion must spell out his
arguments squarely and distinctly, or else forever hold his peace.  
See Sammartano, 161 F.3d at 97-98; Paterson-Leitch Co. v.
Massachusetts Mun. Wholesale Elec. Co., 840 F.2d 985, 990 (1st Cir.
1988).  The district court is free to disregard arguments that are
not adequately developed,  see McCoy v. MIT, 950 F.2d 13, 22 (1st
Cir. 1991), and such arguments cannot be resurrected on appeal.
 These elementary principles are dispositive here.  The
appellant's sex-plus claim never surfaced in the district court,
and the record contains no proof at all about how women with the
"plus" traits that he now says are central to the case were treated
at New Balance.  Because the district court had before it neither
evidence from which it could draw an inference of "sex-plus"
harassment nor a crystallized legal theory that suggested a viable
basis for such a cause of action, no impediment existed to brevis
disposition.
 The appellant's claim of impermissible stereotyping fares
no better.  Although he now maintains that the evidence of co-
workers mocking his supposedly effeminate characteristics supports
an argument for harassment based on sexual stereotypes, he
presented that evidence to the district court only as an example of
discrimination because of sexual orientation.  He did not mention
gender stereotyping below and he did not present any considered
argumentation along that line.  His eleventh-hour statement to the
district court that all harassment based on sexual orientation is
"sex . . . related" was an unsupported conclusion, not a developed
argument   and conclusory statements of that sort cannot defeat
summary judgment.  See Dow v. United Bhd. of Carpenters, 1 F.3d 56,
59-60 (1st Cir. 1993); Medina Munoz v. R.J. Reynolds Tobacco Co.,
896 F.2d 5, 8 (1st Cir. 1990).
 Where, as here, arguments made before the trial court and
the appellate court, respectively, pull from the evidence common
factual threads but weave them into distinctly different legal
patterns, the new argument normally is deemed forfeited.  See
Sammartano, 161 F.3d at 98; Slade, 980 F.2d at 30; Clauson v.
Smith, 823 F.2d 660, 665-66 (1st Cir. 1987).  This is as it should
be:  considerations of fairness, institutional order, and respect
for trial courts in our hierarchical system of justice all militate
strongly in favor of such a rule.  Consequently, the court of
appeals should be extremely reluctant to reverse a district court's
decision because an appellant belatedly presents on appeal a legal
theory, not argued below, hinged on a piece of evidence that was
buried in the district court record.  While such reluctance might
be overcome if compelling reasons for an exception exist, nothing
about the present situation justifies such a departure.  
Accordingly, we conclude that the district court did not err in
granting summary judgment in New Balance's favor on the hostile
environment claim.
              B.  The Retaliatory Discharge Claim.
 The appellant's next claim rests on a somewhat different
foundation.  Section 4572(1)(A) of the MHRA makes it illegal for an
employer to discriminate against an employee in retaliation for the
employee's exercise of rights under the Maine Whistleblowers'
Protection Act (MWPA), Me. Rev. Stat. Ann. tit. 26,  831-840.  
The MWPA, in turn, protects an employee from discrimination when he
has complained to the employer in good faith about a workplace-
related condition or activity that he reasonably believes is
illegal, unsafe, or unhealthy.  See id.  833(1)(A)-(B).  In the
same vein, albeit more narrowly, Title VII prohibits an employer
from discriminating because an employee has opposed an employment
practice made illegal under Title VII or "because [the employee]
has made a charge, testified, assisted, or participated in any
manner in any investigation, proceeding, or hearing" under Title
VII.  42 U.S.C.  2000e-3(a).  Neither state nor federal law
requires that the reported condition, activity, or practice
actually be unsafe or illegal; under either scheme, an employee's
reasonable belief that it crosses the line suffices, as long as the
complainant communicates that belief to his employer in good faith.  
See Bard v. Bath Iron Works, 590 A.2d 152, 154 (Me. 1991)
(explicating relevant MWPA requirements); Petitti v. New Engl. Tel.
& Tel. Co., 909 F.2d 28, 33 (1st Cir. 1990) (explicating relevant
Title VII requirements); cf. Mesnick v. General Elec. Co., 950 F.2d
816, 827 (1st Cir. 1991) (analyzing a similar provision in the Age
Discrimination in Employment Act).
 MWPA claims for retaliatory discharge, like Title VII
claims, typically invite analysis under the framework first
established by the Supreme Court in McDonnell Douglas Corp. v.
Green, 411 U.S. 792, 802-04 (1973).  See Petitti, 909 F.2d at 31;
DiCentes v. Michaud, 719 A.2d 509, 514 (Me. 1998).  To present a
prima facie case, an employee-plaintiff must show (1) that he
engaged in a protected activity, (2) that his employer thereafter
cashiered him, and (3) that there was a causal nexus between the
protected activity and the firing.  See Hoeppner v. Crotched
Mountain Rehab. Ctr., Inc., 31 F.3d 9, 14 (1st Cir. 1994); Bard,
590 A.2d at 154.  If the employer then responds by proffering a
legitimate, nonretaliatory reason for the discharge, the employee
must adduce some significantly probative evidence showing both that
the proffered reason is pretextual and that a retaliatory animus
sparked his dismissal.  See Mesnick, 950 F.2d at 827.
 Citing this body of law, the appellant argued below that
New Balance did not fire him for insubordination or for failing to
be a team player (as it claimed), but, rather, because he
complained repeatedly about a multitude of unsafe and illegal
working conditions.  The district court ruled that the appellant
had failed to make out a prima facie case of retaliatory discharge.  
See Higgins, 21 F. Supp. 2d at 73.  Although assuming that "many"
of his complaints antedated his firing and "may" have constituted
protected conduct under the relevant statutes, the court concluded
that the appellant had failed to demonstrate a causal connection
between his complaints and his ouster.  Id.  In reaching this
conclusion, the court relied heavily upon the lack of any evidence
of temporal proximity between the stream of complaints, on the one
hand, and the appellant's dismissal, on the other, and upon the
absence of any proof that other similarly situated employees were
treated differently.  See id.
 On appeal, the appellant turns his back on the vast
majority of his complaints and zeroes in on the January 1996
incident involving Vitalone.  In his view, this narrowing of the
focus creates a tight temporal link between the two salient events
(his most recent complaint about Vitalone and his firing).  He then
points to the statement in his affidavit to the effect that his
supervisor (Plourde) once told him that he would be "out the door"
if he ever groused about Vitalone again, and argues that this
demonstrates a sufficient causal nexus.
 This revisionist approach brings with it insurmountable
problems.  First, there is no basis in the record for concluding
that Higgins's complaints about Vitalone constituted protected
speech.  After all, Higgins did not assert below that at the time
he complained he believed Vitalone's distemper to be in violation
of Title VII or any other law, or to be a grave risk to his health.  
Nor did he maintain that facts existed to support a reasonable
belief to that effect.  Certainly, the mere inclusion in the record
of New Balance's internal policy against discrimination based on
sexual orientation does not, as the appellant now suggests,
evidence either his state of mind or the reasonableness of his
beliefs.  This leaves the appellant's current claim high and dry:  
when an employer warns an employee that certain work-related
behavior, not itself protected under the law, will be deemed
inimical to the proper functioning of the shop, and the employee
disregards the warning, the employer cannot be sued for retaliation
simply because it then does what it warned it would do.  See Taylor
v. FDIC, 132 F.3d 753, 765 (D.C. Cir. 1997); cf. Hochstadt v.
Worcester Found. for Experim'l Biology, 545 F.2d 222, 233 (1st Cir.
1976).
 We need not elaborate on this point, for a second,
independently fatal, problem is that the appellant comes tardily to
his narrowed construct.  In the lower court, he never ascribed any
significance vis--vis his retaliation claim to Plourde's threat,
the January 4 brouhaha, or any of the events of his last day at
work.  That being so, the Vitalone incident cannot be used now to
satisfy the McDonnell Douglas prima facie case requirement.  See
Sammartano, 161 F.3d at 98; Beddall v. State St. Bank & Trust Co.,
137 F.3d 12, 22 (1st Cir. 1998).
 The appellant has a fallback position.  Courts sometimes
say that the McDonnell Douglas paradigm operates only when there is
no direct evidence of a discriminatory animus.  See, e.g., Price
Waterhouse, 490 U.S. at 244-47 (plurality op.); id. at 278-79
(O'Connor, J., concurring); Hodgens v. General Dynamics Corp., 144
F.3d 151, 160 (1st Cir. 1998); Mesnick, 950 F.2d at 823.  Seizing
on this allusion, the appellant insists that the district court
mis-analyzed his case because he had presented direct evidence of
retaliation (Plourde's threat).  This, too, is an argument that
Higgins did not share with the district court.  Hence, he has
forfeited the right to raise it here.
 Let us be perfectly clear.  When a claim involves
complicated statutory schemes, as this one does, and the plaintiff
"fail[s] to provide any analysis of the statutory scheme, to
present any legal authority directly supporting [his] thesis, or to
give any reason why" particular statutory provisions do or do not
apply, the claim comprises "the merest of skeletons."  McCoy, 950
F.2d at 22.  Such a bareboned thrust is insufficient to overcome a
properly focused motion for summary judgment.  See Sammartano, 161
F.3d at 98.  So here:  the argument that the Plourde threat
constitutes direct evidence of discrimination has been forfeited.  
See Slade, 980 F.2d at 30; Clauson, 823 F.2d at 666.  Because the
district court did not err in concluding, on the arguments actually
presented to it, that there was no sufficient showing of a causal
connection between the appellant's discharge and his complaints
about conditions in the workplace, we uphold its judgment in this
respect.
            C.  The Disability Discrimination Claim.
 Finally, the appellant contends that New Balance failed
to provide reasonable accommodations for his aural disability in
violation of the Americans with Disabilities Act (ADA), 42 U.S.C.
12101-12213, and the MHRA.  The district court rejected this
contention because the appellant had not adduced evidence of
discriminatory animus directed at his disability.  See Higgins, 21
F. Supp. 2d at 72.
 In terms, this ruling is insupportable.  New Balance
argued below that, absent any evidence that it harbored a
disability-related animus against the appellant, no discriminatory
discharge claim would lie under either the ADA or the MHRA.  This
rationale is sound as far as it goes   it disposes handily of the
appellant's discriminatory discharge claim (a claim that the
district court quite properly rejected, see id. at 71 n.7, and one
which the appellant no longer presses)   but it does not go as far
as the district court thought.  When the court applied the same
reasoning to block the appellant's failure-to-accommodate claim, it
erred.
 Under the ADA, a covered employer shall not "discriminate
against a qualified individual with a disability because of the
disability of such individual in regard to job application
procedures, the hiring, advancement, or discharge of employees,
employee compensation, job training, and other terms, conditions,
and privileges of employment."  42 U.S.C.  12112(a).  The
pertinent provisions of the MHRA are to like effect.  See Me. Rev.
Stat. Ann. tit. 5,  4572(1)(A).  In order to facilitate inquiries
into whether an employer's adverse employment decision was
motivated by an employee's disability, courts generally use the
McDonnell Douglas burden-shifting scheme.  See, e.g., Dichner v.
Liberty Travel, 141 F.3d 24, 29-30 (1st Cir. 1998); DiCentes, 719
A.2d at 514 n.10 (citing Maine Human Rights Comm'n v. City of
Auburn, 408 A.2d 1253, 1261-63 (Me. 1979)).  The third stage of
this scheme, as we have interpreted it, requires that the plaintiff
point to evidence, direct or circumstantial, of a particularized
discriminatory animus.  See, e.g., Dichner, 141 F.3d at 30; Smith
v. Stratus Computer, Inc., 40 F.3d 11, 16 (1st Cir. 1994); Mesnick,
950 F.2d at 823-25.  The appellant's discriminatory discharge claim
 a claim abandoned on appeal   exemplifies this genre of cases.
 But under the ADA, "the term 'discriminate' includes . .
. not making reasonable accommodations to the known physical or
mental limitations of an otherwise qualified individual with a
disability . . ., unless [the employer] can demonstrate that the
accommodation would impose an undue hardship on the operation of
the business of [the employer]."  42 U.S.C.  12112(b)(5)(A).  
Maine law is almost identical.  See Me. Rev. Stat. Ann. tit. 5,  
4553(2)(E).  Unlike other enumerated constructions of
"discriminate," this construction does not require that an
employer's action be motivated by a discriminatory animus directed
at the disability.  Rather, any failure to provide reasonable
accommodations for a disability is necessarily "because of a
disability"   the accommodations are only deemed reasonable (and,
thus, required) if they are needed because of the disability   and
no proof of a particularized discriminatory animus is exigible.  
See Bultemeyer v. Fort Wayne Community Schs., 100 F.3d 1281, 1283-
84 (7th Cir. 1996).  Hence, an employer who knows of a disability
yet fails to make reasonable accommodations violates the statute,
no matter what its intent, unless it can show that the proposed
accommodations would create undue hardship for its business.  See
42 U.S.C.  12112(b)(5)(A); Me. Rev. Stat. Ann. tit. 5,  
4553(2)(E); see also Aka v. Washington Hosp. Ctr., 156 F.3d 1284,
1300 (D.C. Cir. 1998) (en banc).  It follows inexorably that the
McDonnell Douglas scheme is inapposite in respect to such claims.  
See Pond v. Michelin N. Am., Inc., 183 F.3d 592, 597 n.5 (7th Cir.
1999); Bultemeyer, 100 F.3d at 1283-84; see generally Kevin W.
Williams, The Reasonable Accommodation Difference:  The Effect of
Applying the Burden Shifting Frameworks Developed under Title VII
in Disparate Treatment Cases to Claims Brought under Title I of the
Americans with Disabilities Act, 18 Berkeley J. Emp. & Lab. L. 98,
151-59 (1997).
 This distinction is in play here.  To survive a motion
for summary judgment on a failure-to-accommodate claim, a plaintiff
ordinarily must furnish significantly probative evidence that he is
a qualified individual with a disability within the meaning of the
applicable statute; that he works (or worked) for an employer whom
the ADA covers; that the employer, despite knowing of the
employee's physical or mental limitations, did not reasonably
accommodate those limitations; and that the employer's failure to
do so affected the terms, conditions, or privileges of the
plaintiff's employment.  See Lyons v. Legal Aid Soc'y, 68 F.3d
1512, 1515 (2d Cir. 1995); Kralik v. Durbin, 130 F.3d 76, 78 (3d
Cir. 1997).  But cf. Gaines v. Runyon, 107 F.3d 1171, 1175 (6th
Cir. 1997) (requiring that the accommodation be both reasonable and
necessary for the plaintiff to perform the essential functions of
his job).  Here, the appellant's failure-to-accommodate claim
satisfied these rather undemanding requirements:  his affidavit
stated, in substance, that he had a hearing impairment, that New
Balance knew of it, and that management nonetheless failed to
accommodate him either by supplying a fan or relocating a
loudspeaker.
 The rest is history.  Despite the fact that the failure-
to-accommodate claim was adequately presented, it was ignored by
the defendant (whose motion for summary judgment did not discuss
it) and misperceived by the district court (which applied the
McDonnell Douglas burden-shifting framework to it).  This induced
the court to err by granting summary judgment on the ground that
the record contained no evidence of a discriminatory animus toward
the appellant's disability.
 Of course, the trial court also wrote that New Balance
had asked the appellant's co-workers to speak up when talking to
him.  See Higgins, 21 F. Supp. 2d at 72.  This undisputed fact does
not save the judgment.  Although an employer's provision of a
specific accommodation may provide relevant circumstantial evidence
in respect to the reasonableness vel non of a different
accommodation, see, e.g., Vande Zande v. Wisconsin Dep't of Admin.,
44 F.3d 538, 546 (7th Cir. 1995), that accommodation will not
always be enough to satisfy the employer's duty under the law, see
Ralph v. Lucent Techs., Inc., 135 F.3d 166, 171-72 (1st Cir. 1998)
("The duty to provide reasonable accommodation is a continuing one
. . . and not exhausted by one effort."); see also Criado v. IBM
Corp., 145 F.3d 437, 444-45 (1st Cir. 1998).  Thus, New Balance's
laudable directive fell short of what was needed to authorize
summary judgment.
 Because a remand is necessary on this aspect of the case,
we add one further observation.  While this appeal was pending, the
Supreme Court decided a series of ADA cases, including Sutton v.
United Air Lines, Inc., 119 S. Ct. 2139, 2149 (1999) (holding that
courts should take corrective measures into account when deciding
whether a plaintiff is "substantially limited in any major life
activity" and thus disabled under the ADA).  Sutton may well put
the appellant's claim in an entirely different light (depending,
inter alia, on the extent to which his hearing impairment is
correctable by a hearing aid).  Sutton, however, calls for a
particularized, fact-specific analysis, see id., and at this point
the record is not sufficiently developed to allow us to assess
Sutton's impact on the case at hand.  Accordingly, we deem it
preferable to leave all Sutton-related issues, in the first
instance, to the nisi prius court.
III.  CONCLUSION
 We need go no further.   For the reasons mentioned above,
we affirm the entry of summary judgment for New Balance on all
claims, save only the appellant's failure-to-accommodate claim
under the ADA and the MHRA.  As to that claim, we vacate the
judgment and remand for further consideration.

 Affirmed in part, vacated in part, and remanded.  No
costs.

</body>

</html>