CYR, Senior Circuit Judge
(dissenting).
Although the majority opinion cogently presents its rationale for classifying the ALPA claim as a “minor” dispute uhder the RLA, its rationale is premised upon an interpretation of Pittsburgh & Lake Erie Railroad Co. v. Railway Labor Executives’ Association, 491 U.S. 490, 109 S.Ct. 2584, 105 L.Ed.2d 415 (1989) (“P & LE ”), which is both overbroad and fundamentally flawed. Consequently, I respectfully dissent.
The appellants neither cited nor relied upon the P & LE decision in the district court, nor have they done so on appeal. Accordingly, their argument has been twice forfeited, and should not be addressed sua sponte. See Plumley v. S. Container, Inc., 303 F.3d 364, 372 n. 7 (1st Cir.2002).[13] Further, it seems highly prob *107 able that appellants refrained from citing P & LE due to the fact that they considered it — as do I — inapposite to the facts in this case, in at least two important respects.
First, unlike Pan Am, P & LE proposed to sell all its operating assets to a company with which it had no apparent corporate affiliation. See P & LE, 491 U.S. at 494-95, 109 S.Ct. 2584 (noting that “P & LE agreed to sell its assets ... to a newly-formed subsidiary, P & LE Rail Co., Inc. (Railco), of Chicago West Pullman Transportation Corporation (CWP)”). P & LE and Railco were entirely distinct entities, with no measure of common ownership or control. In such an arm’s-length transaction, P & LE had nothing to gain from Railco’s decision not to assume the CBA, and accordingly would have had no motive, incentive, nor even the means to utilize the closure to circumvent its obligations to unionized employees as required by the CBA. Nor was it possible that the closure constituted a manipulative effort to structure the transaction among P & LE’s affiliated companies for the sole purpose of divesting itself of the union.
In contrast, the district court determined that Pan Am and Boston-Maine were “part of the same corporate family,” and the findings of fact upon which it premised its conclusion plainly are not clearly erroneous. Air Line Pilots Ass’n, Int’l v. Guilford Transp. Indus., No. 04-331-JD, 360 F.Supp.2d 262, 283, 2004 WL 2203570, at *6 (D.N.H.2004). To by-pass the corporate veil-piercing inquiry, see su-pro Majority Opinion, at Section IV.A., and then to construe P & LE as having adopted a rule to the effect that any employer’s prerogative to close its doors is per se immune from an RLA status-quo injunction, would exalt form over substance by presumptively and artificially treating a single employer’s {viz., Guil-ford’s) potentially unified closure/diversion transaction as two distinct transactions, which in turn would encourage employer manipulation of their intra-“eorporate” entities in a manner antithetical to the RLA’s policies. In my view, P & LE is materially distinguishable because the Court was presented with no evidence that the selling company’s corporate veil should be pierced, but rather with an arm’s-length transaction from which the selling company had no means of reaping or sharing in the buying company’s post-sale benefit of the bargain. Significantly, the majority opinion cites no decision, during the sixteen-year period since P & LE was decided, which has extended its holding to preempt an equitable veil-piercing analysis.
Second, P & LE is inapposite because it did not involve any CBA provision which would create rights in P & LE’s employees in the event P & LE were to decide to cease all operations. See P & LE, 491 U.S. at 503, 109 S.Ct. 2584 (noting that none of the CBAs at issue “dealt with the possibility of the sale of the company, sought to confer any rights on P & LE’s employees in the event of the sale, or guaranteed that jobs would continue to be available indefinitely”) (emphasis added); *108 Chi. & N.W. Transp. Co. v. Ry. Labor Executives’ Ass’n, 908 F.2d 144, 153 (7th Cir.1990) (noting that P & LE rule applies “because the sale does not violate the status quo as defined by the collective bargaining agreement”).
In holding that P & LE’s employees could not enjoin the sale pending bargaining over the effects of the sale, the Supreme Court observed that the right to indefinite employment was not a “condition of employment” over which P & LE was obligated to bargain, and that it had unfettered discretion to terminate its entire business “ ‘for any reason [it] pleases.’ ” P & LE, 491 U.S. at 507, 109 S.Ct. 2584 (citation omitted). This maxim applies even though the CBA contains no provision which expressly authorizes a unilateral closure decision, since the employer has certain managerial prerogatives which are implied. Id. at 509, 109 S.Ct. 2584; see Ry. Labor Executives Ass’n v. City of Galveston, Tx., 897 F.2d 164, 169 (5th Cir.1990) (interpreting P & LE).
The Court did not suggest, however, that the same rule should apply when the CBA at issue contains an express anti-diversion provision which confers upon employees the contractual right to prevent a closure. Here, the CBA negotiated by ALPA contains just such an unambiguous provision, according Pan Am’s pilots the right to bargain over any closure which permits Pan Am to divert business to another company, but only as long as such diversions “do not result in the furlough of any of the Company’s pilots.” In context, the term “furlough” {viz., a mutually agreed upon leave of absence) must be construed as the equivalent of “lay-off.” The Pan Am pre-closure diversions of some 727 flights to Boston-Maine neither implicated nor violated this CBA provision, due to the fact — as the majority decision notes — that they resulted in no lay-off of Pan Am pilots, but simply a diminution in the pilots’ flight hours.
On the other hand, the permanent closure of Pan Am does unmistakably implicate the pilots’ express rights, in that it has resulted in the lay-off of all of the unionized Pan Am pilots. Accordingly, the district court sensibly held that any other proposed interpretation of the CBA provisions is not “arguably justified.” See Air Line Pilots Ass’n, 360 F.Supp.2d at 284, 2004 WL 2203570, at 7 (“[T]he Court finds it totally implausible that ALPA would agree to a provision in the CBA stating that Pan Am could ‘create or acquire an alter ego [completely] to avoid the terms and conditions of the Agreement.’ ... [and] such a provision ... would be contrary to law.”). Unlike P & LE’s employees, Pan Am’s pilots do not rely upon the CBA’s “silence,” but upon a clause expressly purporting to limit Pan Am’s implied prerogatives to close “for any reason.”[14] Pan Am possesses implicit managerial prerogatives, but nothing in either the KLA or P & LE suggests that it cannot waive those prerogatives in CBA negotiations. See Chi. & N.W. Transp., 908 F.2d at 152 (“A matter of prerogative is one the carrier is not required to bargain over and therefore is unlikely to surrender in bargaining, though nothing in the [RLA] forbids it to do so. If there has been no waiver of prerogative in the *109 [CBA], then the union cannot insist that the carrier bargain over prerogative matters.”)- Since the closure/diversion would require rescission or reformation of an extant CBA clause, rather than its mere interpretation, by definition it is a “major” dispute under the RLA. See Bhd. of Locomotive Eng’rs v. Springfield Terminal Ry. Co., 210 F.3d 18, 23 & n. 3 (1st Cir.2000).
For at least these two important reasons, the defendants in this case prudently decided not to rely upon the inapposite P & LE decision, either in the district court or on appeal. In all events, the argument has been waived. As ALPA is entitled to bargain {viz., negotiate and self-help) over both the Pan Am closure and its effects, I would affirm the status-quo injunction granted by the district court.

. The majority asseverates that the defendants adequately preserved the legal theory propounded in P & LE merely by arguing — in general terms — that, "because Pan Am went out of business entirely, no transfer of work took place.” Besides the implausibility of the notion that defendants could advance a legal principle without citing the seminal Supreme Court case establishing it, we repeatedly have refused to countenance the majority's generalized approach to issue preservation. See B & T Masonry Constr. Co. v. Pub. Serv. Mutual Ins. Co., 382 F.3d 36, 41 (1st Cir.2004) (" '[A] party is not at liberty to articulate specific arguments for the first time on appeal simply because the general issue was before the district court.' ") (citation omitted); Am. Cyanamid Co. v. Capuano, 381 F.3d 6, 18 (1st *107 Cir.2004) (" 'We have steadfastly deemed waived issues raised on appeal in a perfunctory manner, not accompanied by developed argumentation'") (citation omitted). Nowhere in their appellate brief did the defendants even remotely allude to the P & LE legal theory — that regardless whether their proposed interpretation of particular CBA terms can be considered "arguably justified,” thus engendering only a "minor dispute”.— the RLA independently and implicitly afforded them an absolute prerogative to close Pan Am for any reason and with complete immunity from a status-quo injunction, an entirely distinct legal theory, which, if meritorious, moots defendants' interpretive gloss on the CBA.

. Perhaps in acknowledgment of the harsh interpretation it accorded P & LE, the majority opinion admirably attempts to engraft upon the P & LE -holding a limitation that an employer can exercise its prerogative for only a legitimate business reason. See supra Majority Opinion, at Section IV.C. Unfortunately, this dictum cannot be found anywhere in P & LE’s language. Moreover, it is belied by the Court’s unqualified declaration that the closure may be for "any reason [the employer] pleases," even when the employer is motivated by anti-union animus. P & LE, 491 U.S. at 507, 109 S.Ct. 2584.