# United States Court of Appeals
## For the First Circuit

No. 13-1172

VERMONT MUTUAL INSURANCE COMPANY,

Plaintiff, Appellant,

v.

ANDREW ZAMSKY ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

[Hon. Robert B. Collings, U.S. Magistrate Judge]

Before

Howard, Selya and Lipez,
Circuit Judges.

Peter C. Kober, with whom Murphy & Riley, P.C. was on brief, for appellant.

James T. Scamby, with whom Michael W. Reilly, Tommasino & Tommasino, and Heifetz Rose LLP were on brief, for appellees Andrew Zamsky and Massachusetts Property Insurance Underwriting Association (FAIR Plan).

David W. White, Jr., with whom Breakstone, White & Gluck was on brief, for appellee Renata Ivnitskaya.

Kara Thorvaldsen, with whom George C. Rockas and Wilson, Elser, Moskowitz, Edelman & Dicker LLP were on brief, for appellee Scottsdale Insurance Company.

October 9, 2013

**SELYA, Circuit Judge.** It seems self-evident that a story that involves throwing gasoline on a smoldering fire is unlikely to have a happy ending. That is true here, but the parties to this appeal have sifted through the embers and identified what some might regard as an oxymoron: an interesting insurance coverage question. After careful consideration, we conclude that the district court properly construed the relevant insurance contracts and proceeded to answer the coverage question correctly.[1] Accordingly, we affirm.

Defendant-appellee Andrew Zamsky is an insured under three homeowners' policies issued to his parents by plaintiff-appellant Vermont Mutual Insurance Company (Vermont Mutual). Each of these policies covered a separate parcel of residential real estate owned by the Zamskys. In relevant part, they require Vermont Mutual to defend and indemnify all persons insured thereunder, including Andrew Zamsky, against claims stemming from "bodily injury" caused by a covered "occurrence," subject, however, to various exclusions. One such exclusion appearing in all three policies, which we shall refer to as the "UL exclusion," pretermits coverage for injuries "[a]rising out of a premises" owned by an insured but not itself an "insured location." The Zamskys owned a

---

[1] The case was decided below on summary judgment. In entering the dispositive order, the district judge adopted the report and recommendation of a magistrate judge. For ease in exposition, we take an institutional view and refer only to "the district court," without distinguishing between the two judicial officers.

fourth piece of residential real estate, not insured by Vermont Mutual. The case before us concerns an accident that occurred there and turns on the applicability vel non of the UL exclusions contained in the Vermont Mutual policies.

The background facts are susceptible to succinct summary. On the night of November 27, 2008, Zamsky, defendant-appellee Renata Ivnitskaya, and several friends drove to a house in Falmouth, Massachusetts owned by Zamsky's parents. It is undisputed that the Falmouth house was not an "insured location" as defined in the policies.

At some point after their arrival, Zamsky retrieved from a shed on the property a portable fire pit that he had purchased earlier that year. The fire pit was somewhere around 30 inches wide and about 18 inches high. It weighed between 30 and 40 pounds.

The group positioned the fire pit on a deck attached to the house. They tried to start a fire, but the wood that they had collected for that purpose was damp and would not burn readily.

One member of the group, Aaron Bronstein, told Zamsky that he wanted to get something to help the fire along. Zamsky suggested that Bronstein look in either the garage or the shed. Bronstein retrieved a container of gasoline and poured it on the fire.

The consequent conflagration set at least three of the assembled persons aflame.  One of these individuals — Ivnitskaya — suffered especially severe burns.

In due course, Ivnitskaya sued Zamsky for bodily injuries in a Massachusetts state court, alleging a golconda of negligent acts and omissions.  That suit is still pending; Vermont Mutual and defendant-appellee Massachusetts Property Insurance Underwriting Association (FAIR Plan) have been sharing the cost of defending Zamsky.  Vermont Mutual, however, has done so pursuant to a reservation of rights.  Defendant-appellee Scottsdale Insurance Company (Scottsdale) has been keeping a watchful eye on the proceedings because it provides umbrella coverage (i.e., excess liability coverage) to the Zamsky family.

After Ivnitskaya's state court suit was brought, Vermont Mutual filed this declaratory judgment action in the federal court. It named as defendants Zamsky, FAIR Plan, Ivnitskaya, and Scottsdale; premised federal jurisdiction on diversity of citizenship and the existence of a controversy in the requisite amount, see 28 U.S.C. § 1332(a)(1); and prayed for a declaration that the UL exclusions in its policies pretermitted any obligation either to continue to defend Zamsky in the negligence suit or to indemnify him against any damage award.[2]

---

[2] In pertinent part, the text of the UL exclusion (which is identical in all three Vermont Mutual policies) reads as follows:

Once answers were filed and discovery completed, the parties cross-moved for summary judgment. The district court denied Vermont Mutual's motion and granted the appellees' motions, holding that the UL exclusion did not apply and that Vermont Mutual owed Zamsky a duty to defend. See Vt. Mut. Ins. Co. v. Zamsky, 916 F. Supp. 2d 156, 159 (D. Mass. 2012); see also Vt. Mut. Ins. Co. v. Zamsky, No. 11-11869, 2012 WL 6864702 (D. Mass. Dec. 17, 2012). This timely appeal followed.

The question before us is a limited one. Vermont Mutual asked the district court to declare nonexistent any duty on its part either to defend or to indemnify. The district court did not take the bait but, rather, restricted its judgment to the duty to defend. See Zamsky, 916 F. Supp. 2d at 159. This makes sense as, in the ordinary course, "the duty of an insurance carrier to defend the insured is broader than its duty to indemnify." B & T Masonry Constr. Co. v. Pub. Serv. Mut. Ins. Co., 382 F.3d 36, 39 (1st Cir. 2004) (construing Massachusetts law). Had the appellees been

---

1. **Coverage E — Personal Liability** and **Coverage F — Medical Payments to Others** do not apply to "bodily injury" or "property damage":
. . .
e. Arising out of a premises:
    (1) Owned by an "insured";
    (2) Rented to an "insured"; or
    (3) Rented to others by an "insured";
    that is not an "insured location" . . . .

It is conceded that if the occurrence which caused Ivnitskaya's injuries arose out of the Falmouth premises, the exclusion should be given effect.

intent on securing a more complete declaration of their rights (extending, say, to the duty to indemnify), they could have cross-appealed. They did not do so. In the absence of a cross-appeal, only the duty to defend is properly before us. See Haley v. City of Boston, 657 F.3d 39, 53 (1st Cir. 2011) ("It is black-letter law that even though an appellee can argue in support of a lower court's ruling in his favor on any ground made manifest in the record . . ., he cannot, without a cross-appeal, argue against a judgment in his favor in an endeavor either to expand his rights or to diminish the appellant's rights."). We proceed accordingly.

This is a diversity case and, with respect to the limited question before us, the law of Massachusetts supplies the substantive rules of decision. See B & T Masonry, 382 F.3d at 38; U.S. Liab. Ins. Co. v. Selman, 70 F.3d 684, 688 (1st Cir. 1995). In Massachusetts, the duty to defend arises when "the facts alleged in the complaint and those facts which are known by the insurer," Bos. Symph. Orch., Inc. v. Commercial Union Ins. Co., 545 N.E.2d 1156, 1158 (Mass. 1989), demonstrate "a possibility that the liability claim falls within the insurance coverage," B & T Masonry, 382 F.3d at 39 (internal quotation marks omitted). The initial burden is on the insured to demonstrate that the overall coverage provisions apply. If the insured successfully makes that showing, the burden then shifts to the insurer to demonstrate that some exclusion defeats coverage. See id. At all times, ambiguity

in the language of the policy must be construed in favor of coverage or, put another way, in favor of the insured.  See id.

In this instance, the parties agree that, based on the allegations in Ivnitskaya's complaint and facts known to Vermont Mutual, coverage attaches unless some exclusion operates to defeat it.  We thus proceed directly to the second stage of the inquiry and ask whether Vermont Mutual has identified such an exclusion.

To this end, Vermont Mutual says that the UL exclusion carries the day.  The district court disagreed.  See Zamsky, 916 F. Supp. 2d at 158-59.  Our task is to determine the accuracy of the district court's conclusion that the UL exclusion does not apply.

Our standard of review is familiar.  We examine district court rulings on summary judgment de novo.  See Certain Interested Underwriters at Lloyd's, London v. Stolberg, 680 F.3d 61, 65 (1st Cir. 2012).  This standard dovetails with the proposition, time-honored in Massachusetts, that the interpretation of an insurance policy typically embodies a question of law for the court.  See id.; Cody v. Conn. Gen. Life Ins. Co., 439 N.E.2d 234, 237 (Mass. 1982).

In the case at hand, there is no genuine dispute as to any material fact.[3]  These undisputed facts tee up a question about

---

[3] The parties make a considerable racket about whether Zamsky and his friends decided to light a fire before or after they drove to Falmouth.  As we explain infra, this disputed fact is not material to the resolution of the coverage question.

the meaning and effect of the UL exclusion. This is a question that the highest court of Massachusetts — the Supreme Judicial Court (SJC) — has yet to answer. In such a situation, it is our obligation to make an informed prophecy as to how that court, if confronted with the question, would be likely to rule. See Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co., 547 F.3d 48, 51 (1st Cir. 2008). When making such a prediction, we may look to a variety of sources, including decisions of the lower courts in Massachusetts, persuasive adjudications by other courts, scholarly works, and considerations touching upon public policy. See Blinzler v. Marriott Int'l, Inc., 81 F.3d 1148, 1151 (1st Cir. 1996).

We start close to home. "While decisions of a state's intermediate appellate court are not binding on a federal court sitting in diversity, such opinions are entitled to some weight." Andrew Robinson, 547 F.3d at 55. Two decisions of the Massachusetts Appeals Court, each of which construes the UL exclusion, are instructive here.

The first of these cases is Callahan v. Quincy Mutual Fire Insurance Co., 736 N.E.2d 857 (Mass. App. Ct. 2000). There, an insured's dog had bitten a third party at premises owned by the insured but not covered by Quincy Mutual. See id. at 858. The victim sued the insured for personal injuries. In the ensuing coverage dispute, the court held that the UL exclusion in Quincy

-8-

Mutual's policy did not pertain because the dog "was not a condition of the . . . premises." Id. at 859. Thus, while the occurrence "happened [at the uninsured location], . . . it did not 'arise out of'" the premises. Id.

The second case is Commerce Insurance Co. v. Theodore, 841 N.E.2d 281 (Mass. App. Ct. 2006). There, a third party entered premises owned by the insured but not covered by Commerce in order to minister to a dying tree. See id. at 282. Due to the insured's alleged negligence, the third party fell from a ladder and sustained injuries. See id. He subsequently brought suit against the insured. In the ensuing coverage dispute, the court held that the UL exclusion in Commerce's policy applied. It reasoned that "where . . . a third person is on the property to repair a condition of the property . . . [t]here is a sufficiently close relationship between the injury and the premises" such that the injury should be understood to have arisen out of the premises. Id. at 285. (internal quotation marks omitted).

These bookend cases set the parameters of our inquiry. In both of them, the Appeals Court interpreted the UL exclusion's ambiguous "arising out of a premises" language to mean arising out of a condition of a premises. See id. at 284-85; Callahan, 736 N.E.2d at 859. Read together, the cases establish a dichotomy: if the covered occurrence arises out of a condition of the premises and the exclusion's other requirements are satisfied, the exclusion

-9-

applies; otherwise, it does not. This dichotomy is faithful to an interpretive principle long hallowed by the SJC: ambiguities in insurance policies are to be construed in favor of affording coverage to the insured. See, e.g., Hakim v. Mass. Insurers' Insolvency Fund, 675 N.E.2d 1161, 1165 (Mass. 1997); Rocci v. Mass. Accident Co., 110 N.E. 972, 974 (Mass. 1916). This venerable principle underpins, and is fully consistent with, the SJC's unwavering insistence that exclusions from coverage should be strictly construed. See Hakim, 675 N.E.2d at 1165.

In an effort to alter the trajectory of the debate, Vermont Mutual suggests that this principle is trumped (or at least neutralized) by the SJC's instruction that the phrase "arising out of" should be construed broadly, regardless of whether that phrase appears in an exclusion or an insuring agreement. See, e.g., Bagley v. Monticello Ins. Co., 720 N.E.2d 813, 816 (Mass. 1999) (construing the phrase in the context of a policy exclusion); Rischitelli v. Safety Ins. Co., 671 N.E.2d 1243, 1245 (Mass. 1996) (construing the phrase in the context of an insuring agreement). This suggestion fails because the "arising out of" language only comes into play if there is some causal link between the covered occurrence and a condition of the premises. Here, there is no such linkage.

The bookend cases illustrate this sequencing. In Callahan, the court found no causal link between the occurrence and

a condition of the premises, see 736 N.E.2d at 859, and thus did not separately address any ambiguity inherent in the interstitial "arising out of" language.  As the court said, the question before it was "less one of reach than it [was] of fit."  Id.

In Theodore, however, the court determined that a condition of the premises — a diseased tree — had a sufficient link with the occurrence.  See 841 N.E.2d at 285 ("[I]t is incontrovertible that the insured asked [the victim] to help him because of the dying tree on the . . . property.").  Only after it had made that determination did the court proceed to construe broadly the phrase "arising out of" and conclude that the UL exclusion applied.  See id.  This second step gave force to the exclusion even though a more direct cause of the victim's injuries (the insured's alleged negligence in failing to steady the ladder) existed.  See id. at 282, 285.

Vermont Mutual has a fallback position.  It seizes upon the Theodore court's reference to the victim's purpose in order to argue that if Zamsky and his cohorts went to the Falmouth house with the pre-formed intention of lighting a fire, the occurrence at issue must have arisen out of the premises.  This is linguistic legerdemain.  The victim's purpose in Theodore was material because it was inextricably intertwined with a condition of the premises.  Here, however, the group's reason for going to Falmouth was not

material because that purpose was not related to a condition of the premises.  That makes all the difference.[4]

In the last analysis, we think that the dichotomy delineated by the Appeals Court in Callahan and Theodore — a dichotomy that focuses the inquiry, in the first instance, on whether or not the occurrence arose out of a condition of the premises — is sensible and conforms to general principles long embedded in Massachusetts jurisprudence.  Moreover, reading the UL exclusion in this way coincides with the weight of authority elsewhere.  See, e.g., Kitchens v. Brown, 545 So. 2d 1310, 1311-12 (La. Ct. App. 1989); Westfield Ins. Co. v. Hunter, 948 N.E.2d 931, 932-33 (Ohio 2011); see also Callahan, 736 N.E.2d at 859-60 & n.5 (describing and collecting cases from other jurisdictions).[5]  Such a reading also comports with sound public policy.  After all, the dichotomy draws an easily administered line and enhances

_____

[4] Vermont Mutual invites us to set aside the judgment because the district court erred in stating that Zamsky and his friends did not decide to light a fire until after their arrival in Falmouth. See Zamsky, 916 F. Supp. 2d at 157.  We decline the invitation. Since the timing of the decision to light a fire is immaterial, the district court's statement, even if erroneous, is harmless.  See Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 253 (1st Cir. 1996) ("[A] fact is 'material' only when it possesses the capacity . . . to alter the outcome of the lawsuit under the applicable legal tenets.").

[5] This is not to say that courts outside Massachusetts are unanimous in this view.  They are not.  See, e.g., Maroney v. N.Y. Cent. Mut. Fire Ins. Co., 839 N.E.2d 886, 889-90 (N.Y. 2005); Schinner v. Gundrum, 833 N.W.2d 685, 703-04 (Wis. 2013).  But we conclude that the SJC — like the Appeals Court — would be apt to follow the weight of authority.

predictability of results — a laudable objective from the vantage point of both insurers and insureds. See Langill v. Vt. Mut. Ins. Co., 268 F.3d 46, 49 (1st Cir. 2001) ("What seems preeminent in this insurance context, for both insurer and insured, is predictability."); Bos. Gas Co. v. Century Indem. Co., 910 N.E.2d 290, 311 (Mass. 2009) (taking "stability and predictability in the insurance market" to be an important consideration).

We add a coda. Insurance policies should be construed, where possible, to conform to the reasonable expectations of the parties. See Hazen Paper Co. v. U.S. Fid. & Guar. Co., 555 N.E.2d 576, 583 (Mass. 1990) (explaining that it is "appropriate, in construing an insurance policy, to consider what an objectively reasonable insured, reading the relevant policy language, would expect to be covered"). Vermont Mutual drafted the policies at issue here. If it wanted to exclude from coverage all injuries occurring at an owned premises that it did not insure, it would have been child's play to say so. But Vermont Mutual eschewed this straightforward course and chose instead to sound an uncertain trumpet. Under such circumstances, we do not believe that the SJC would countenance the insurer's revisionist attempt to make a policy exclusion sweep more broadly than its language dictates. See, e.g., Makrigiannis v. Nintendo of Am., Inc., 815 N.E.2d 1066, 1071 (Mass. 2004) (observing that if the insurer "intended to

exclude coverage" under certain conditions "it could have expressly stated such an exclusion").

To say more on this point would be supererogatory. We conclude that when squarely confronted with a case that hinges on the UL exclusion, the SJC will follow the path demarcated by the Massachusetts Appeals Court. Using this interpretive model, we hold that the UL exclusion does not apply here.

Although we leave for another day the exact contours of the phrase "a condition of the premises," it is nose-on-the-face plain that this portable fire pit — stored on the property for a matter of months and used just once prior to the occurrence (in a different location) — was not a condition of the Falmouth premises. The fact that the fire pit was easily movable is a significant consideration. See 9 Steven Plitt et al., Couch on Insurance 3d § 126:8 (2008); see also Callahan, 736 N.E.2d at 859. Unlike the tree in Theodore, 841 N.E.2d at 285, the fire pit was not a part of the premises. Unlike the electric fence that the Callahan court hypothesized would be considered a condition of the premises, 736 N.E.2d at 859, the fire pit was not erected on the property. Nor did the fire pit constitute a defect in some part of the premises, such as "the loose board, the falling roof slate, the defect in the walkway, [or] the failure of outdoor lighting" mentioned by both the Theodore and Callahan courts. See Theodore, 841 N.E.2d at 284 (quoting Callahan, 736 N.E.2d at 860). Rather, the fire pit was a

-14-

portable item of personal property that happened to be stored in a building on the Falmouth premises.

It follows inexorably, as night follows day, that the occurrence at issue here did not arise out of a condition of the premises. Consequently, the court below did not err in determining that the UL exclusion did not apply.

We need go no further. For the reasons elucidated above, the judgment is


**Affirmed**.