MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:       2025 ME 89
Docket:         Wal-24-236
Argued:         January 8, 2025
Decided:        September 23, 2025

Panel:          STANFILL, C.J., and MEAD, CONNORS, LAWRENCE, and DOUGLAS, JJ.[*]

## ALICIA ROWE

v.

## STATE MUTUAL INSURANCE COMPANY

LAWRENCE, J.

[¶1]  Alicia Rowe appeals from an order by the Superior Court (Waldo County, *R. Murray, J.*) granting summary judgment in favor of State Mutual Insurance Company (State Mutual) in a reach-and-apply action that Rowe brought pursuant to 24-A M.R.S. § 2904 (2019).[1] *See Ashe v. Enter. Rent-A-Car*, 2003 ME 147, ¶ 14, 838 A.2d 1157 ("The reach and apply statute . . . enables a judgment creditor to have insurance money applied to the satisfaction of [a] judgment by bringing an action against the judgment debtor's insurer if [there] was insur[ance coverage] for the liability forming the basis of the [underlying]

---

[*] Although Justice Horton participated in the appeal, he retired before this opinion was certified.

[1] This statute has since been amended in ways not relevant to this appeal.  *See* R.R. 2021, ch. 1, § B-254; P.L. 2023, ch. 405,  § A-90 (effective Oct. 25, 2023).

judgment." (quotation marks omitted)).  The underlying claim in this case is a complaint that Rowe filed against William and Gwen Chase, who are insured by State Mutual, based on the Chases' negligence in failing to warn Rowe of unsafe conditions on their property, resulting in injury to Rowe.  We conclude that the court properly granted summary judgment in favor of State Mutual.

## I.  BACKGROUND

[¶2]  "The following facts are drawn from the summary judgment record and are not disputed by the parties."  *Dussault v. RRE Coach Lantern Holdings, LLC*, 2014 ME 8, ¶ 2, 86 A.3d 52.

## A.     The Property

[¶3]  In 1995, William and Gwen Chase purchased a parcel of land of about thirteen acres in size located on Winnecook Road in Burnham, Maine.  The Chases cleared some of the lot and installed a well and septic system.[2]  In 1996, the Chases purchased a mobile home, which they placed on the parcel.  The Chases rented out the property with the mobile home on it to various family members, relatives, friends, and the public.[3]

---

[2] State Mutual's statement of material facts also states that the Chases installed a driveway and ran electricity to the property, but the record does not seem to support those facts.

[3] The parcel of land on which the mobile home sits never changed ownership; the Chases have owned the land continuously since 1995.

## B.    The Injury

[¶4]  On October 30, 2019, the Chases were looking for tenants to occupy the property.  Rowe had scheduled an appointment that day to examine the mobile home, with a view toward renting the property.[4]  When Rowe arrived, the Chases were showing the mobile home to another prospective tenant.  As Rowe went to enter the mobile home, she stepped into a hidden twelve-inch-wide gap between the mobile home and the entryway stairs.[5]  William Chase was in the process of replacing a door to the mobile home and the associated siding, and he had pulled the entryway stairs about twelve inches away from the mobile home, leaving the gap.  Rowe's right foot fell nearly to the ground, her left foot remained on the entryway stairs, and she was

Ownership of the mobile home did change over time.  The Chases first sold the mobile home to Wesley Brooks, Gwen Chase's son by a prior marriage, in 1998 or 1999.  Wesley Brooks sold the mobile home to the Chases' nephew, Jason Brooks.  Jason Brooks sold the mobile home back to the Chases, who rented the mobile home out until they sold it to Justin Drake, a nephew of Gwen Chase. Justin Drake owned the mobile home for about five or six years until he gave it to his sister, Hillary Drake.  Hillary lived at the mobile home for about two or three years until September 1, 2019, when she sold it back to the Chases.  Except for Wesley Brooks and his wife, Kelly, the other individuals who owned the mobile home paid rent for the lot that the mobile home sat on.

[4]  State Mutual alleges that Rowe's appointment with the Chases was not until 6:00 p.m. and she arrived about fifteen minutes early.  At her December 2020 deposition, Rowe stated that she had arrived "right around 5:50."

[5]  Rowe states that she had not received any warnings from the Chases about the gap.

4

injured.[6]  William Chase admitted at his discovery deposition that he should have warned Rowe about the gap prior to her arrival.

## C.  The Policy

[¶5]  State Mutual had issued a Master Mobile Homeowners policy to the Chases that was in effect at the time of the injury with a policy period of November 30, 2018, to November 30, 2019 (the Policy).  The Chases own another property located on Troy Road in Burnham, Maine, and it was this property that was identified as the covered premises on the declarations page of the Policy.[7]  The premises located on Winnecook Road in Burnham—where Rowe's injury took place—was not identified as the covered property on the declarations page of the Policy.

[¶6]  The Chases provided State Mutual with timely notice of Rowe's October 30, 2019, accident.  State Mutual issued a declination letter dated January 29, 2020, to the Chases, taking the position that there was no coverage for Rowe's bodily injury claim.  State Mutual took that position because the property located on Winnecook Road in Burnham was not an insured location,

---

[6]  In her complaint, Rowe alleged that the gap into which she fell was approximately three feet deep, but State Mutual did not admit this fact.

[7]  The record supports the fact that the Chases reside at the property located on Troy Road, but Rowe did not admit this fact.

as that term is defined in the Policy, pursuant to the declarations page. Thus, Rowe's claim against the Chases was excluded from coverage under the Policy.

[¶7] Subsequently, State Mutual agreed to defend the Chases with respect to Rowe's bodily injury claim subject to its reservation of rights to recover the costs of the defense as outlined in the letter dated June 25, 2021.

**D.      The Underlying Claim**

[¶8] In August 2020, Rowe filed a complaint and a request for a jury trial alleging that the Chases had been negligent in failing to warn Rowe of a condition on their property and that their negligence had caused Rowe's injuries.

[¶9] In January 2022, Rowe and the Chases entered into a settlement agreement and stipulated judgment for $500,000 to be awarded to Rowe. As part of the stipulated judgment, the Chases paid $50,000 of their own money to Rowe.

**E.      The Reach-and-Apply Action**

[¶10] On May 3, 2022, Rowe filed a reach-and-apply complaint pursuant to 24-A M.R.S.A. § 2904, seeking to recover the remainder of the stipulated judgment amount from State Mutual under the Policy. On May 6, 2022, State Mutual filed an answer and a counterclaim for a declaratory judgment, alleging

6

that Rowe could not collect from State Mutual for this claim because the Policy did not cover it and because Rowe and the Chases colluded to obtain a satisfaction of the judgment from State Mutual.[8]  On May 18, 2022, Rowe responded to State Mutual's counterclaim, arguing that the settlement agreement that she entered into with the Chases was noncollusive.

[¶11]  In May 2023,[9] State Mutual and Rowe each filed a motion for partial summary judgment.  *See* M.R. Civ. P. 56.

[¶12]  On May 8, 2024, the court granted State Mutual's motion for partial summary judgment and determined that Rowe's motion for partial summary judgment was thereby rendered moot.  The court determined that the grant of State Mutual's motion for summary judgment was a final judgment.

[¶13]  Rowe timely appealed.  *See* M.R. App. 2B(c)(1).

## II.  DISCUSSION

[¶14]  "We review the entry of a summary judgment de novo and will uphold the summary judgment if, viewing the record in the light most favorable

---

[8] State Mutual alleged that Rowe and the Chases had colluded in reaching the stipulated judgment; in breaching the Policy condition regarding cooperation; and in breaching the Policy conditions of no voluntary payment, assumption of obligation, and/or incurring of any expense without State Mutual's consent.

[9] Several procedural events occurred between May 2022 and May 2023, none of which are material to any issue on appeal.

to the nonmoving party[,] there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *MMG Ins. Co. v. Est. of Greenlaw*, 2024 ME 28, ¶ 13, 314 A.3d 262 (quotation marks omitted). "We also review de novo whether the trial court made any errors of law in interpreting coverage under [an] insurance policy. A provision of an insurance contract is ambiguous if it is reasonably susceptible of different interpretations or if any ordinary person in the shoes of the insured would not understand that the policy did not cover claims such as those brought. If an insurance contract contains an ambiguity, then that ambiguity is construed strictly against the insurer and liberally in favor of the insured. Unambiguous contract language, however, must be interpreted according to its plain meaning." *Id.* ¶ 14 (citations and quotation marks omitted).

[¶15] Under the reach-and-apply statute that was in effect at the time that Rowe was injured,

> [w]henever any person . . . recovers a final judgment against any other person for any loss or damage specified in section 2903,[10] the judgment creditor shall be entitled to have the insurance money applied to the satisfaction of the judgment by bringing a

---

[10] Title 24-A M.R.S. § 2903 (2025) provides, "The liability of every insurer which insures any person against accidental loss or damage on account of personal injury or death or on account of accidental damage to property shall become absolute whenever such loss or damage, for which the insured is responsible, occurs. The rendition of a final judgment against the insured for such loss or damage shall not be a condition precedent to the right or obligation of the insurer to make payment on account of such loss or damage."

> civil action, in his own name, against the insurer to reach and apply the insurance money, *if when the right of action accrued, the judgment debtor was insured against such liability* and if before the recovery of the judgment the insurer had had notice of such accident, injury or damage. The insurer shall have the right to invoke the defenses described in this section in the proceedings.

24-A M.R.S. § 2904 (emphasis added). "In applying the reach and apply statute . . . we look to the basis for liability and damages that has been asserted in the underlying complaint and found in the underlying judgment. We then look to the homeowners insurance policy to determine if any of the damages awarded in the underlying judgment are based on claims that would be recoverable pursuant to the homeowners policy. *Although any ambiguities in an insurance contract are construed in favor of coverage, the party seeking to recover pursuant to the reach and apply statute . . . has the burden to demonstrate that her awarded damages fall within the scope of the insurance contract.*" *Jacobi v. MMG Ins. Co.*, 2011 ME 56, ¶ 14, 17 A.3d 1229 (citations omitted; emphasis added). We now turn to consider each of the relevant parts of the Policy language to determine whether the Policy language is ambiguous.

**A. "Arising out of"**

[¶16] The Policy contains various exclusions from coverage, including for situations in which a bodily injury occurs at an insured's premises that is not an insured location. The relevant Policy language provides:

SECTION II — EXCLUSIONS

. . . .

E. Coverage E — Personal Liability And Coverage F — Medical Payments To Others

Coverages E and F do not apply to the following:

. . . .

4. "Insured's" Premises Not An "Insured Location"

"Bodily injury" or "property damage" *arising out of a premises:*

a. Owned by an "insured";

b. Rented to an "insured"; or

c. Rented to others by an "insured";

*that is not an "insured location".* . . .

[¶17]  Rowe argues that the exclusion for "bodily injury" "arising out of" a premises that is not an "insured location" does not apply in this case because Rowe's bodily injury claim arises out of the Chases' tortious conduct, specifically their negligent failure to provide her with adequate warnings about the gap in the entryway stairs that they created, not out of a condition on the premises where she was injured.  Rowe cites two First Circuit cases to support the argument that the "insured location" exclusion applies only to the insureds'

liability based upon theories of premises liability "arising out of" a hazardous condition of a premises, not to liability for negligent conduct in general. *See Vermont Mut. Ins. Co. v. Zamsky*, 732 F.3d 37, 40, 45 (1st Cir. 2013) (concluding that bodily injury caused by pouring gasoline on a portable fire pit "did not arise out of a condition of the premises"); *AIG Prop. Cas. Co. v. Cosby*, 892 F.3d 25, 29 (1st Cir. 2018) (asserting that the insured's claim was not excluded by the policy at issue because "arising out of" was ambiguous given the circumstances of the case). State Mutual argues that Rowe's injury occurred and arose from defective conditions on the Winnecook Road property, and that the property did not meet the definition of "insured location" under the Policy. State Mutual contends that the dangerous condition of the gap between the entryway stairs and the entrance to the mobile home and the Chases' failure to warn Rowe of the gap are inextricably related and that Rowe's injury was sufficiently caused by the gap to have arisen from that dangerous condition.

[¶18] We have not yet interpreted "arising out of" language in the context of a premises liability case. In the context of a workers' compensation case, we stated that "the term 'arising out of' employment means that there must be some causal connection between the conditions under which the employee worked and the injury, or that the injury, in some proximate way, had its origin,

its source, or its cause in the employment. . . . [T]he employment need not be the sole or predominant causal factor for the injury and . . . the causative circumstance need not have been foreseen or expected." *Standring v. Town of Skowhegan*, 2005 ME 51, ¶ 10, 870 A.2d 128 (citation omitted).

[¶19] A Massachusetts case provides guidance for our analysis. In 2006, Theodore, a property owner, sought to have his insurer defend and indemnify him regarding a personal injury claim that occurred on an uninsured property that he owned. *Com. Ins. Co. v. Theodore*, 841 N.E.2d 281, 282 (Mass. App. Ct. 2006). Theodore had DeAmelio help him cut down a dying tree on the uninsured property, and Theodore stopped holding the ladder that DeAmelio was using in order to cut the tree, causing the ladder to shift and DeAmelio to fall from the ladder and sustain an injury. *Id.* The relevant exclusion in the homeowner's policy at issue in that case was very similar to the language in this case, excluding personal liability and medical payments to others for injuries "[a]rising out of a premises: (1) Owned by an 'insured' . . . that is not an 'insured location.'" *Id.* The court stated that "'[a]rising out of' is ordinarily held to mean originating from, growing out of, flowing from, incident to or having connection with and that 'in connection with' has even a broader meaning." *Id.* at 284 (some quotation marks omitted). Therefore, the court held that "[i]n view of

12

the broad meaning given to the term 'arising out of' in our cases and its 'incorporating a greater range of causation than that encompassed by proximate cause' . . . such injury is one 'arising out of a premises.' There is a 'sufficiently close relationship between the injury' and the premises." *Id.* at 285 (citations omitted).[11]

[¶20] Here, the facts are analogous to *Theodore* because there is similarly an immediate relationship between the injury and a condition of the uninsured premises. *See* 841 N.E.2d 281, 285 (2006). There is a clear causal link running from the gap between the entryway stairs and the mobile home entrance to Rowe's bodily injury, as required by the causal connection test from *Standring*. 2005 ME 51, ¶ 10, 870 A.2d 128. Therefore, Rowe's injury is excluded from coverage under the Policy. *See id.*; *Theodore*, 841 N.E.2d 281, 285 (2006).

[¶21] Further, Rowe's argument is not supported by the First Circuit cases that she cites pertaining to "arising out of" language in a premises liability

---

[11] *See also Callahan v. Quincy Mut. Fire Ins. Co.*, 736 N.E.2d 857, 860 n.5 (Mass. App. Ct. 2000) (providing an extensive list of "[o]ther cases that apply the 'arising out of' other premises exclusion to a condition of . . . the real property"); James F. Comerford and Mark S. Coven, 58 Mass. Prac., *Insurance Law* § 3:21, Arising out of Premises Owned by Insured but not Insured Location (2025) ("A policy may exclude from liability coverage bodily injury . . .'arising out of premises . . . owned by an insured . . . that is not an insured location.' Generally, 'arises out of' in this context will 'relate' to a condition of a location . . . . Stated differently, '[a]n injury arises out of a premises if it has a causal connection to a "condition of the premises" . . . . For example, 'a hole in the walkway, a loose step, defective plumbing, . . . faulty electric wiring,' or 'dying tree,' all may be conditions out of which a bodily injury arise under which the exclusion may control.").

context. Unlike the nature of the injury stemming from the gap between the entryway stairs and the mobile home in this case, the facts in *Vermont Mutual Insurance* make clear that the injury in question there was not a result of a condition of the property at issue. 732 F.3d 37, 44 (1st Cir. 2013) (concluding that a "portable fire pit—stored on the property for a matter of months and used just once prior to the occurrence (in a different location)—was not a condition of the [uninsured] premises"). In a similar fashion, contrary to Rowe's contention, *AIG Prop. Cas. Co. v. Cosby* does not hold that "arising out of" language must be narrowly construed, but rather confines its conclusions as follows: "To be clear, we do not hold that 'arising out of' is an inherently ambiguous term under Massachusetts law or that discrepancies in insurance provisions always give rise to ambiguity. Rather, our holding is confined to this case where the ambiguity question is close to begin with and where another sexual-misconduct exclusion is worded more broadly." 892 F.3d 25, 29 (1st Cir. 2018).

[¶22] Therefore, we conclude that there is no genuine issue of material fact regarding whether Rowe's injury arose from the property on Winnecook Road. Next, we consider whether the property at issue was an "insured location" under the relevant policy language.

14

**B.** **"Insured Location"**

[¶23] Rowe and State Mutual disagree about whether the property where Rowe's injuries occurred—on Winnecook Road in Burnham—constitutes an "insured location" under the Policy and thus whether the bodily injury was excluded from coverage.

[¶24] The relevant Policy language provides:

"Insured Location" means:

> a. The "residence premises";
>
> b. The part of other premises, other structures and grounds used by you as a residence; and
>
>> (1) Which is shown in the Declarations; or
>>
>> (2) Which is acquired by you during the policy period for your use as a residence;
>
> c. Any premises used by you in connection with a premises described in a. and b. above;
>
> d. Any part of a premises;
>
>> (1) Not owned by an "insured"; and
>>
>> (2) Where an "insured" is temporarily residing . . . .

[¶25] Rowe argues that the mobile home on Winnecook Road in Burnham qualifies as an "insured location" under the Policy because it was acquired by the Chases during the policy period for use as a residence.

"[V]iewing the facts in the light most favorable to Rowe and construing the exclusion strictly against State Mutual . . . the Chases acquired the mobile home to use it as a residence. Though they may not have planned to live there themselves, the Chases undisputably intended to rent the mobile home out to tenants to use for residential purposes." Rowe contends that the plain meaning of "for your use as a residence" is not "for your use as your residence" and therefore the meaning is ambiguous, and the language must be interpreted against the insurer and in favor of coverage.[12]

[¶26] State Mutual argues that the premises on Winnecook Road in Burnham was not an "insured location" under the policy "because it was not shown on the Policy Declarations [page], it was not used by the Chases as a residence, and it was not acquired by the Chases during the Policy period for their use as a residence." State Mutual argues that the Policy language at issue in this matter, specifically the meaning of "insured location," is unambiguous in this context and requires that the premises be used by the insured as the insured's residence. State Mutual further contends that the premises was not

---

[12] Rowe cites *Geyerhahn v. U.S. Fid. & Guar. Co.* for the rule that "[i]nsurance contract language is ambiguous if it is reasonably susceptible of different interpretations," but neither in briefing nor at oral argument did Rowe apply this rule to the facts in this case to explain why "for your use as a residence" would be reasonably susceptible of different interpretations. *See* 1999 ME 40, ¶ 12, 724 A.2d 1258 (quotation marks omitted).

16

acquired by the Chases during the policy period[13] but adds that it does not matter whether the Chases acquired the mobile home during the policy period because they never lived or intended to live in the mobile home in the twenty-five years that they owned the Winnecook Road property.

[¶27]  Under the plain meaning of the relevant Policy language, the criteria required for a property to be an "insured location" are that either (1) the insured resides at the property, at least temporarily, (2) the property is acquired during the policy period for the insured to use as the insured's residence, or (3) the property is shown on the declarations page of the Policy.

[¶28]  Here, the property on Winnecook Road is not on the declarations page of the Policy, and there is no evidence that the Chases resided at the property on Winnecook Road or that they acquired the property for their use as their residence.[14]

[¶29]  Contrary to Rowe's contention, the language "[t]he part of other premises, other structures and grounds used by you as a residence; and . . . acquired by you during the policy period for your use as a residence" is not

---

[13] Title to the lot on which the mobile home is placed did not change during the policy period, but title to the mobile home did change.  *See supra* n.3.

[14]  Although Rowe did not admit that the Chases never resided on Winnecook Road, she did concede that the Chases were seeking to rent the mobile to tenants after they acquired it during the Policy period.

ambiguous because the Policy defines "the insured" as "[y]ou," so "used by you as a residence" means "used by the insured as a residence," not "used by anyone as a residence." *See Progressive Nw. Ins. Co. v. Metro. Prop. & Cas. Ins. Co.*, 2021 ME 54, ¶ 10, 261 A.3d 920 ("An insurance policy must be examined as a whole to determine whether it is ambiguous. Policy language is ambiguous if it is reasonably susceptible to different interpretations. However, a dispute over the meaning of a term, or [the] inability of the insured to understand the policy, does not render the contract ambiguous." (citations and quotation marks omitted)). Further, other states have interpreted this same definition of "insured location" ("premises . . . used by you as a residence and . . . acquired by you during the policy period for your use as a residence") to mean premises that the named insured uses as their own residence. *Towns v. Vermont Mut. Ins. Co.*, 726 A.2d 65, 67 (Vt. 1999) ("A fair inference from the definition of 'insured location' is that the policy only covers property where the insured currently resides or on which the insured is building a dwelling with the intent of residing therein."); *Williamson v. Standard Fire Ins. Co.*, No. CIV.A. 04C-07-033RFS, 2005 WL 6318348, at *3 (Del. Super. Ct. Aug. 19, 2005) ("In the policy here there is, at the very least, a minimum residency requirement. This is evidenced by the use of the term 'residence premises' along with the language

defining that term. If . . . [the named insured] had used the dwelling only as a rental property, the result would be clear. The policy would not provide coverage.").

[¶30] Further, considering the instrument as a whole, this Policy contemplates that an insured may own premises that the insured rents to others, such as the mobile home on Winnecook Road, and excludes such premises from the definition of "insured location." *See Am. Prot. Ins. Co. v. Acadia Ins. Co.*, 2003 ME 6, ¶¶ 11-12, 814 A.2d 989 ("A contract of insurance, like any other contract, is to be construed in accordance with the intention of the parties, which is to be ascertained from an examination of the whole instrument. . . . Accordingly, when interpreting a contract, a court needs to look at the whole instrument.") (quotation marks omitted). As stated above, section II(E)(4) of the Policy excludes the following from its coverage for personal liability: "'Bodily injury' . . . arising out of a premises . . . Rented to others by an 'insured' that is not an 'insured location.'" Given the facts in this case, we conclude that it is not reasonable to interpret the Policy language to include the premises that the Chases intended to rent out on Winnecook Road as an insured location. *See Greenlaw*, 2024 ME 28, ¶ 14, 314 A.3d 262 (holding that a provision of an insurance contract is ambiguous if it is *reasonably* susceptible

of different interpretations and that unambiguous contract language must be interpreted according to its plain meaning).

[¶31]   The Mobilehome Endorsement to the Policy supersedes and further clarifies the definition[15] of "Residence Premises" to specifically refer to the mobile home where "you" (under the Policy, the Chases) reside:

DEFINITIONS

. . . .

11.  "Residence Premises" is deleted and replaced by the following:

11.   "Residence Premises" means the mobilehome and other structures located on land:

    a.  Owned or leased by you where you reside; and

    b.   Which is shown as the "residence premises" in the Declarations.

This definition further demonstrates that under the Policy, an insured location is one where *the insured person actually resides* because one of the definitions for "insured location" is "the 'residence premises.'"

---

[15]   In the definitions section of the Policy, "Residence Premises" is defined as "a. The one family dwelling where you reside; b. The two, three or four family dwelling where you reside in at least one of the family units; or c. That part of any other building where you reside; and which is shown as the 'residence premises' in the Declarations.  'Residence Premises' also include other structures and grounds at that location."

20

[¶32]  For the foregoing reasons, even viewing the evidence in the light most favorable to Rowe, there is no genuine issue as to the material fact that Rowe's injury at the property on Winnecook Road is excluded under the Policy. Rowe has not met her burden of proof to show that her awarded damages fall within the scope of the Policy.  *See Jacobi*, 2011 ME 56, ¶ 14, 17 A.3d 1229.

[¶33]  Therefore, we affirm the court's grant of summary judgment to State Mutual.

The entry is:

Judgment affirmed.

---

Jeffrey T. Edwards, Esq. (orally), Preti, Flaherty, Beliveau & Pachios, LLP, Portland, for appellant Alicia Rowe

Matthew T. Mehalic, Esq. (orally), Norman Hanson & DeTroy, LLC, Portland, for appellee State Mutual Insurance Company

Waldo County Superior Court docket number CV-2022-8
FOR CLERK REFERENCE ONLY